IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JANE MARIE GROVE, | ) | Case No. 04-46404-ABF |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JOHN C. KENNEDY, | ) | Adversary No. 05-4003 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JANE MARIE GROVE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| GLADSTONE FAMILY DENTISTRY, | ) | Adversary No. 05-4005 |
| L.L.C., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JANE MARIE GROVE, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER DIRECTING JUDGMENT

This is a suit for nondischargeability under Sections 523(a)(2), (4), and (6). Plaintiff John C. Kennedy and Debtor-Defendant Jane Marie Grove previously operated a dental practice as Grove & Kennedy Dental Clinic, Prof., L.L.C. Dr. Kennedy made his capital contribution to Grove and Kennedy with the proceeds of a loan from Platte Valley Bank. Plaintiff Gladstone Family Dentistry, L.L.C., which is owned by Dr. Kennedy, purchased the note from Platte Valley Bank on or about June 4, 2004. Such note was secured by all the assets of Grove & Kennedy.

Grove & Kennedy purchased the assets of a practice previously owned by Dr. Grove, which practice was known as A. C. Edwards, D.D.S., P.C. The total purchase price was

$212,500.00, pursuant to an asset purchase agreement executed December 28, 2001. Of the total purchase price, the parties allocated $73,370.00 to equipment, $20,000.00 to furniture and computer systems, $10,000.00 to inventory, with the balance being patient lists and blue sky. As part of the asset purchase agreement, Dr. Grove represented that the assets were free and clear of all liens and encumbrances. Thereafter, on or about December 16, 2002, A. C. Edwards received notice of an audit by the IRS, the end result of which was the filing of tax liens against its assets.

Sometime prior to July 8, 2003, Dr. Grove sent an undated letter to Dr. Kennedy asking to be bought out of Grove & Kennedy. On or about September 13, 2003, the two doctors entered into a Stipulated Order and Operating Agreement. As a result, Dr. Kennedy withdrew from Grove & Kennedy, and Dr. Grove was given sole authority to manage the company. Prior to that time, both Drs. Kennedy and Grove had exercised management authority. On or about September 30, 2003, an IRS tax lien was filed against the assets of Grove & Kennedy for failure to pay Form 941 withholding taxes. No prior tax liens had been filed against Grove & Kennedy. On or about October 16, 2003, Grove caused security systems to be installed, both at her home and at the Grove & Kennedy office located in Suite 202 at 6301 North Oak, Kansas City, Missouri. Thereafter, on October 17 and 21, 2003, she caused cameras to be installed at the same locations. Later, on or about May 20, 2004, she caused a camera to be installed at an apartment to which she had moved. All such cameras and security equipment were owned by Grove & Kennedy. The total purchase price for such items was $6,239.54. Ultimately, such cameras and security equipment ended up in the possession of Dr. Grove or No Pain Jane, Inc., a dental clinic she subsequently formed.

On June 16, 2004, R. Michael Gunn, was appointed by the Circuit Court to act as receiver for Grove & Kennedy. Although Dr. Grove agreed to continue practicing dentistry for him, it soon became obvious that the practice was not viable and would need to be shut

down. On or prior to July 8, 2004, Dr. Grove negotiated a lease for Suite 201, across the hall

from Grove & Kennedy, and made arrangements to open a new practice under the name "No

Pain Jane". On July 8, 2004, she caused the security system keypad to be moved from Suite

202 to Suite 201. On July 12, 2004, she signed a lease for Suite 201, which lease was

effective as of July 1, 2004. On July 19, 2004, the receiver closed Grove & Kennedy and

discharged all employees. There was no evidence that, in opening No Pain Jane, Dr. Grove

used the services of employees being paid by the receiver, other than for de minimis tasks.

On July 26, 2004, No Pain Jane saw its first patients. Dr. Grove provided various

explanations as to where she obtained equipment and supplies to open the practice, none of

which were believable. Although she testified that she had obtained supplies from Drs.

Anderson and Hansen, both of them testified, and neither recalled providing her with the type

of supplies that would be necessary to open a new office. In addition, she testified that she

had obtained equipment from a Dr. Burke, but said that he was probably at the lake and so

was unable to testify. She further testified that various "friends" helped her install the

equipment she had obtained, but none of them testified either. On or about July 29, 2004, the

receiver changed the locks on Suite 202. By that time, a substantial portion of the equipment

and supplies located in that Suite had been removed. I find that equipment and supplies

owned by Grove & Kennedy were converted by Dr. Grove, and used in her new offices at

No Pain Jane.

Plaintiff Kennedy alleges that, at the time Grove & Kennedy purchased assets from

A. C. Edwards, Dr. Grove misrepresented the financial condition of the business, particularly

relating to the tax liens which were subsequently filed, and that such misrepresentation was

made under false pretenses, was a false representation, or actual fraud. I find that Dr. Grove

did not intentionally misrepresent the tax situation of A. C. Edwards. I further find that no

damages were suffered as a result of such misrepresentation.

Plaintiff Kennedy also contends that Dr. Grove committed fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, all of which are actionable under Section 523(a)(4). The basis for these allegations is his contention that Dr. Grove paid personal living expenses out of the income of Grove & Kennedy, and that such payments were a breach of her fiduciary duty to him. Prior to the Stipulated Order and Operating Agreement on September 13, 2003, both parties in effect acted as managers of the company. The accounting system provided for allocation of salaries and draws of both partners, and made provision for payment of personal expenses to be included in that allocation. There was no evidence as to what Dr. Grove would have been entitled to receive in salary and compensation during that period of time, as compared to what she actually took, including the payment of personal expenses. Furthermore, prior to September 13, 2003, Dr. Kennedy had the right to take steps to challenge payments made by Dr. Grove, which appeared to have been made on a monthly basis, but declined to do so. Therefore, I find that Dr. Grove did not breach any fiduciary duty to Dr. Kennedy in paying personal expenses prior to September 13, 2003.

As of September 13, 2003, Dr. Kennedy withdrew as a member of the company. The Operating Agreement, signed by the parties on December 28, 2001, provides that upon withdrawal, a member shall cease to be a member. I find that the substance of the relationship between the parties at that time was contractual, and not fiduciary. *See, Hunter v. Philpott,* 373 F.3d 873 (8th Cir. 2004). In any event, I find that there is no evidence that damages were suffered by virtue of such personal expenses being paid, since there was no evidence as to what Dr. Grove would have been entitled to receive during that period of time based on her production. In addition, there is no evidence as to what bills the company would have been required to pay out of such income, and whether there would have been anything left for Dr. Kennedy after payment of Dr. Grove's salary, and after payment of other

expenses of the company. I further find that in establishing No Pain Jane, Dr. Grove did not use Grove & Kennedy funds to pay employees for services performed on behalf of No Pain Jane. I further find that, given the condition of Grove & Kennedy, and the fact that its closing was imminent, she did not breach any fiduciary duty by taking steps in July 2004 to establish her own dental practice.

I reject the evidence offered by Dr. Kennedy to the effect that, as of September 2003, his half of the practice had a value in excess of $200,000.00. Such value was contingent on this being a continuing operation, without regard to Dr. Grove not being prohibited from setting up her own competing practice. Given the bitter relationship between the partners, I find that the practice had no value other than that attributable to the equipment, inventory, supplies, and accounts receivable.

Gladstone Family Dentistry, L.L.C. also seeks a finding of nondischargeability under Section 523(a)(6) for willful and malicious injury to its property. As stated, by the time the practice was closed in July, Gladstone had purchased an assignment of the note due Dr. Kennedy to Platte Valley Bank. Such note was secured by the assets of Grove & Kennedy. During the month of July 2004, Dr. Grove caused the equipment, inventory, and supplies to be moved from Suite 202 to Suite 201, and thereby converted property of Grove & Kennedy to her own use. Such conversion was headstrong and knowing, and was therefore willful. Such conversion was also targeted at Dr. Kennedy and Gladstone, in a sense that the conduct was certain to cause them harm, and was in fact intended to do so. I find the value of the equipment, supplies, and inventory which was converted to be $48,711.00.

I further find that the keypad, security systems, and cameras, all of which were property of Grove & Kennedy,  were converted by Dr. Grove, and that such conversion was willful and malicious, resulting in damages in the amount of $6,239.54.

In addition, I find that beginning in July 2004, Dr. Grove converted certain accounts

receivable due Grove & Kennedy, and caused the resulting funds to be deposited in the bank accounts of No Pain Jane. The total amount so converted was $13,103.44. Such conversion was willful and malicious.

Accordingly, the Clerk of Court is ORDERED to enter judgment in favor of plaintiff Gladstone Family Dentistry, L.L.C., and against debtor-defendant Jane Marie Grove, in the amount of $68,153.98, such judgment to be nondischargeable under Section 523(a)(6) of the Bankruptcy Code for willful and malicious injury by the debtor to the property of another entity. In all other respects, judgment should be entered in favor of debtor-defendant Jane Marie Grove.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: May 17, 2005

COURT TO SERVE PARTIES NOT RECEIVING ELECTRONIC NOTICE